## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

——————————————————— )
RITA SANDERS LUSE,                      )
                                        )
MARIANNE LIGOCKI,                       )
                                        )
    Plaintiffs,                     )
                                        )   CLASS ACTION
    v.                              )
                                        )   CIVIL ACTION NO. 2:16-cv-00030-WCO
SENTINEL OFFENDER                       )
SERVICES, LLC,                          )   JURY TRIAL DEMANDED
                                        )
STACY MCDOWELL-BLACK,                   )
Probation Officer, Sentinel Offender    )
Services, LLC, Cleveland, Georgia,      )
                                        )
                                        )
    Defendants.                     )
——————————————————— )

## COMPLAINT

Plaintiffs Rita Sanders Luse and Marianne Ligocki, on behalf of themselves and the class alleged herein, state as follows for their Complaint:

## INTRODUCTION

1.    This is an action to stop Defendants—a private probation company and a private probation officer—from requiring people on probation for minor traffic offenses to submit to and to pay for drug tests that were not ordered or

authorized by any court. The company requires probationers to submit their urine to company employees and to pay the company for drug tests, in violation of law, solely to increase its revenue.

2.      Sentinel Offender Services, LLC ("Sentinel") is one of the largest providers of private probation services in Georgia. Sentinel contracts with the White County Probate Court to supervise probation cases.

3.      Plaintiffs are two women who received traffic citations in Cleveland, Georgia. Rita Luse is a 62-year-old grandmother on a limited income. Marianne Ligocki is a 45-year-old mother, also on a limited income. Both women appeared in court and pleaded guilty to driving while unlicensed before Judge Garrison Baker, the presiding judge of the White County Probate Court. Judge Baker fined each Plaintiff and placed her on probation with Sentinel.

## A. Unsanctioned and Forced Drug Tests

4.      Judge Baker did not order that either Plaintiff would be required, as part of her sentence, to produce a urine sample to Sentinel for drug testing. The sentencing documents in Plaintiffs' cases clearly show that no drug tests were ordered in either case. *See* Exhibits B and C.

5.      Despite the absence of any written or verbal court authorization permitting drug testing, the Sentinel probation officer, without legal authority,

informed each Plaintiff that she would be required to urinate in a cup and submit her urine to a Sentinel employee. In the case of Plaintiff Ligocki, her Sentinel probation officer required her to urinate in a cup with the bathroom door open, and in the presence of a Sentinel employee.

6. In each case, the Plaintiff objected to the test. In each case, the Sentinel probation officer falsely told the Plaintiff that drug tests were a court-ordered requirement of probation and that failure to submit a urine sample would result in revocation of probation.

7. Over the course of her probation, Plaintiff Luse was required to submit to about four drug tests and to pay Sentinel about $60 in fees that were not ordered by any court. To date, Plaintiff Ligocki's probation officer has required Ligocki to submit to at least five drug tests and to pay Sentinel $95 in drug test fees. Ligocki is still on probation and is subject to further illegal drug testing.

8. Sentinel employees do not have legal authority to require people to submit their urine to a private probation officer without a court order. Sentinel employees do not have legal authority to require such people to urinate in view of a Sentinel employee.

9. A review of White County Probate Court files shows numerous instances in which people on probation were required to submit to drug tests that were not ordered by the court.

10. Defendants have a policy, custom, and practice of falsely representing to probationers that they are required to submit their urine to Sentinel employees in cases in which drug testing was not court-ordered ("the Unsanctioned and Forced Drug Tests Policy").

11. Defendants' policy, custom, and practice of forcing people to submit their urine for drug testing and to pay for such testing violates the United States Constitution and the Georgia Constitution. Further, it violates Georgia law and constitutes invasion of personal privacy and conversion of Plaintiffs' and putative class members' money. Plaintiffs assert claims for violations of their civil rights under 42 U.S.C. § 1983 and Georgia law.

**B. False Threats of Jail for Nonpayment**

12. Plaintiffs further bring this litigation to challenge a second, illegal business practice by Sentinel—its practice of intentionally coercing people to pay Sentinel with false threats that nonpayment will result in immediate incarceration at the sole discretion of the probation officer. Plaintiff Luse, a 62-year-old grandmother, was subject to this practice, as described herein.

13.     The Plaintiffs' Sentinel probation officer has a practice of coercing payments from probationers by falsely representing that failure to pay fines and fees will result in immediate incarceration in her sole discretion ("the False Threats of Jail for Nonpayment Policy").

14.     Through this policy, Sentinel has intentionally caused Plaintiff Luse and others stress, anxiety, humiliation, and fear of incarceration.

15.     Sentinel uses threats of incarceration to ensure that probationers will prioritize payments to Sentinel over probationers' other financial obligations, such as rent, child care, food or medical expenses.

16.     The threats made by Plaintiffs' probation officer are inconsistent with legal authority limiting the company's power to revoke probation.  Sentinel's practice in this regard constitutes fraud and misrepresentation under Georgia law.

17.     Plaintiffs seek damages and declaratory and injunctive relief as set forth herein.

## JURISDICTION AND VENUE

18.     This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, as this action arises under the laws and Constitution of the United States; pursuant to 28 U.S.C. § 1983; pursuant to its supplemental

jurisdiction under 28 U.S.C. § 1367; and pursuant to 28 U.S.C. § 2201, as an actual controversy exists within this Court's jurisdiction. This Court is authorized to grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

19.     Venue is proper pursuant to 28 U.S.C. § 1391, because at least one Defendant resides in this District and all Defendants reside in this State, and because a substantial part of the events or omissions giving rise to the claims set forth in this Complaint occurred within this District.

## PARTIES

### A. Plaintiffs

20.     Rita Sanders Luse is a 62-year-old woman who resides in Cleveland, Georgia.  She has one son and three grandchildren.  Luse works for a group that provides community support to people with serious mental illness.  She is on a limited income.  In March 2014, Luse pleaded guilty in the White County Probate Court to driving while unlicensed.

21.     Marianne Ligocki is a 45-year-old woman who resides in Cleveland, Georgia.  Ligocki has nine children and is on a limited income.  In July 2015, Ligocki pleaded guilty in the White County Probate Court to driving while unlicensed.

**B. Defendants**

22.     Defendant Sentinel Offender Services, LLC, is a Delaware company that does business in the State of Georgia, in this District, and in this Division. Sentinel is headquartered in the State of California. Sentinel performs a public function that was traditionally the exclusive prerogative of the State—supervision of people on probation. Georgia law authorizes the White County Probate Court to contract with Sentinel to perform that public function. O.C.G.A. § 42-8-101(a)(1). Sentinel has caused, authorized, condoned, ratified, approved, and knowingly participated in a policy and practice of (A) requiring probationers in the White County Probate Court to produce their urine and to pay for drug tests, without court order or legal authority, and (B) falsely representing to probationers that they will be immediately jailed in the Sentinel probation officer's sole discretion if they are unable to pay fines and fees. Sentinel is a state actor and a person acting under color of state law and is liable under 42 U.S.C. § 1983.

23.     Defendant Stacy McDowell-Black is a private probation officer employed at Sentinel's office in Cleveland, Georgia. She resides in this District and this Division. McDowell-Black is a "private probation officer" performing a public function. O.C.G.A. § 42-8-100. McDowell-Black has caused, authorized, condoned, ratified, approved, and knowingly participated in a policy and practice

7

of (A) requiring probationers to produce their urine and to pay for drug tests, without court order or legal authority, and (B) falsely representing to probationers that they will be immediately jailed in her sole discretion if they are unable to pay fines and fees. At all times pertinent to this action, McDowell-Black was acting under color of state law.

## CLASS ACTION ALLEGATIONS

24. Plaintiffs bring this class action pursuant to Rules 23(a) and (b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure on their behalf and on behalf of a class similarly situated and affected during the pendency of this lawsuit and in the future. Plaintiffs will seek to certify a class to seek relief with respect to the Unsanctioned and Forced Drug Tests Policy. The class is defined as all persons with criminal charges requiring them to appear in the White County Probate Court who are, were, or in the future will be subject to the Defendants' practice of requiring probationers to submit to and to pay for drug tests, in the absence of any court order authorizing such drug tests.

25. Plaintiffs meet the requirements of Rule 23(a) in that:

    a. The class is so numerous that joinder of all members is impracticable. The class consists of an unknown number of probationers, who can be readily identified through court and probation records, who have been

or will be under a legal obligation to appear before the White County Probate Court, and who are subject to Defendants' policy of requiring submission to and payment for drug tests in cases in which no such tests were court-ordered.

b.  There are questions of law and fact common to the class concerning the constitutionality and lawfulness of the Defendants' policy challenged in this Complaint.  The absence of any lawful basis for forcing probationers to submit their urine and to pay for drug tests presents a question of fact and law common to all class members.  Similarly, there is a common question as to whether the Unsanctioned and Forced Drug Tests Policy violates state and federal law.

c.  The policy challenged in this action applies with equal force to the named plaintiffs and all members of the class so that the claims of the plaintiffs are typical of those of the class.  Ligocki and Luse were subject to the Unsanctioned and Forced Drug Tests Policy.

d.  The named Plaintiffs will fairly and adequately protect the interests of the class.  The Plaintiffs possess the requisite personal interest in the subject matter of the lawsuit and possess no interests adverse to other class members.  The Plaintiffs are represented by attorneys at the

Southern Center for Human Rights, a nonprofit organization with extensive experience in complex class action litigation.

26.     Plaintiffs meet the requirements of Rule 23(b)(2) in that the Defendants acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

27.     Plaintiffs meet the requirements of Rule 23(b)(3) because common questions of law and fact predominate over questions affecting individual class members.  A class action is superior to any other method of adjudicating this dispute because hundreds of people are subjected to the Unsanctioned and Forced Drug Tests Policy described in this Complaint, but few are likely to have the time, legal acumen, and resources to pursue the claims at issue in this case on their own.

## STATEMENT OF FACTS

### A. The White County Probate Court's Delegation of Probation Services to Sentinel

28.     The Georgia Code authorizes governing authorities to contract with private companies to provide probation supervision services.  O.C.G.A. § 42-8-101(a)(1).  The White County Probate Court, with the approval of the government of White County, entered into such a contract with Sentinel.  (Exhibit A.)

## B. Sentinel's Violation of Its Contract with White County and of Georgia Rules and Regulations Governing Fee Collection

29.     The contract between the White County Probate Court and Sentinel states that Sentinel agrees to "[c]ollect from probationers, court-ordered fines, restitution and other costs *associated with order of the Court*." Exhibit A at 2 (emphasis supplied).  The contract further provides that "[d]rug counselling and urine surveillance will be provided to probationers *identified by the Court* has having drug or alcohol related problems.  Probationers will assume the cost of random drug and/or alcohol testing."  *Id.* at 3 (emphasis supplied).

30.     The Rules and Regulations of the State of Georgia place further limitations on the circumstances under which probation companies may assess fees.  Ga. Comp. R. & Regs. 503-1-.30 states:

> a.  No probation entity shall assess, collect, or disburse any funds as it pertains to the collection of court-ordered monies, except by written order of the court or as required by State law.
>
> b.  No probation entity, owner, director, agent, or employee may offer any program service or component for an additional fee unless the fee charge has been ordered by the court or as required by State law.

31.     Ga. Comp. R. & Regs. 503-1-.31 further states: "No owner, operator, director, agent or employee shall collect or disburse any funds as it pertains to

O.C.G.A. § 42-8-100, except by written or oral order of the court or as required by State law."

32. Defendants' practice of drug-testing Plaintiffs and charging them money for such tests violates both Sentinel's contract with the Probate Court and Rules and Regulations of the State of Georgia governing private probation entities.

**C. Application of Defendants' Policies to Rita Sanders Luse**

33. On March 12, 2014, Luse appeared in the White County Probate Court and pleaded guilty to the charge of driving while unlicensed.[1]

34. The Probate Court sentenced Luse to pay a fine of $775.75. Because Luse could not pay on the day of court, Judge Baker placed Luse on probation for 12 months and ordered her to pay $44 per month in probation supervision fees.

35. Judge Baker memorialized Luse's sentence in a disposition form. (Exhibit B.) The disposition form contains a number of boxes that the judge can check if he wishes to impose special conditions of probation. The policy and practice of the Probate Court, consistent with Georgia law and the Constitution, is

---

[1] Unbeknownst to her, Luse's license had been suspended due to a then-unresolved citation involving Luse's car registration.

12

to write all court-imposed obligations on the disposition sheet so that probationers understand what is required of them.

36.     The disposition form in Luse's case shows that no special conditions of probation were imposed.  In particular, Judge Baker did not impose the special condition printed on the form that states: "Probationer shall upon request by the Probation Officer or any Law Enforcement Officer, produce specimen of bodily substance for analysis for the presence of a substance prohibited by the Law of the State of Georgia, the United States or by the terms of this sentence."  (Exhibit B.)

37.     Although the court did not order drug-testing in Luse's case, Sentinel drug-tested her anyway.  When Luse reported to Sentinel's Cleveland office, Defendant McDowell-Black told Luse that she would be required to take a drug test.  Luse objected.  McDowell-Black falsely told Luse that drug testing was a condition of her probation and that she was required to submit a urine sample.

38.     McDowell-Black required Luse to sign a document that would purport to permit Sentinel to collect and test Luse's urine for controlled substances.  Luse signed the document, believing, due to McDowell-Black's misrepresentation, that her probation could be revoked if she refused to comply with her probation officer's directions.

39.    Luse was then instructed to urinate in a cup and to deliver her urine specimen to a Sentinel employee.

40.    Sentinel charged Luse a $15 fee for each drug test.

41.    McDowell-Black repeatedly caused Luse to submit to and pay for drug tests over the course of her year on probation.

42.    Luse never tested positive for any controlled substance.

43.    Luse does not drink any alcohol or use illegal drugs.  During the course of her probation sentence, Luse never manifested any signs or symptoms of a person under the influence of or dependent on drugs or alcohol.

44.    McDowell-Black further falsely threatened to immediately jail Luse when Luse was unable to pay her fines and fees.

45.    About halfway through her probation term, Luse reported to McDowell-Black without her payment.  Luse explained that she did not have any money left in her bank account, but that she would receive a pay check from her employer in a few days.  Luse asked for a brief extension on Sentinel's payment deadline.  McDowell-Black falsely informed Luse that if she did not have her full payment of approximately $140 within a few hours, McDowell-Black would have Luse immediately arrested.

46.     Luse was forced to call a relative to ask for a loan, to rush across town to collect the loaned money, to obtain a money order, and to rush back to Sentinel's office with the payment.  She did so believing that she would be sent to jail if she did not pay that day.

47.     McDowell-Black's use of the false threat of imminent jail to coerce an immediate payment from Luse caused Luse anxiety, stress, and humiliation.

## D. Application of Defendants' Policies to Marianne Ligocki

48.     On February 10, 2015, Ligocki was on her way to pick up her son from school when a White County Sheriff's Deputy stopped her vehicle at a roadside checkpoint.  The deputy discovered that Ligocki's driver's license was suspended,[2] and he cited her for driving on a suspended license.

49.     On July 8, 2015, Ligocki appeared in the White County Probate Court and pleaded guilty to a reduced charge of driving while unlicensed.

50.     Judge Baker sentenced Ligocki to a fine and surcharges totaling $313.02.  Because Ligocki was unable to pay the fine on the day of court, Judge

_____

[2] Ligocki's license was suspended due to a traffic ticket from the DeKalb County Recorder's Court from 2011.  Ligocki believed that she had paid the Recorder's Court ticket and that the case had been resolved.  Following her arrest in White County, Ligocki resolved the DeKalb County Recorder's Court ticket and had her license reinstated.

Baker sentenced her to 12 months on probation at $44.00 per month.  Judge Baker also sentenced Ligocki to 20 hours of community service, to be suspended upon payment of all fines and surcharges.

51.     Judge Baker memorialized Ligocki's sentence in a disposition form. (Exhibit C.)  The disposition form contains a number of boxes that the judge could check if he wished to impose special conditions of probation.

52.     The disposition form in Ligocki's case shows that no special conditions of probation were imposed.  In particular, Judge Baker did not impose the condition printed on the form that states: "Probationer shall upon request by the Probation Officer or any Law Enforcement Officer, produce specimen of bodily substance for analysis for the presence of a substance prohibited by the Law of the State of Georgia, the United States or by the terms of this sentence."  (Exhibit C.)

53.     On July 23, 2015, Ligocki reported for her first visit to McDowell-Black at Sentinel's Cleveland office.  Upon arrival, Ligocki was required to submit to a pat-down search of her person by a Sentinel employee.

54.     McDowell-Black then told Ligocki that Ligocki would be required to submit a urine sample for a drug test.  Ligocki objected, pointing out that the Probate Court had not ordered drug testing in her case.

55.     McDowell-Black falsely told Ligocki that drug testing was a condition of her probation and that she was required to submit a urine sample.

56.     McDowell-Black forced Ligocki to sign a "waiver" document that purported to permit Sentinel to test Ligocki's urine for drugs. Ligocki protested again and asked what would happen if she did not sign the "waiver" document. McDowell-Black falsely responded that if Ligocki did not sign the document she could not be on probation and her probation could be revoked. Ligocki signed the document, believing, due to McDowell-Black's misrepresentation, that she could be sent to jail if she refused to comply with her probation officer's directions.

57.     McDowell-Black then instructed Ligocki to submit a urine sample. Ligocki was required to take down her pants and urinate in a cup with the door partially open and with a Sentinel employee standing by the door to the bathroom. McDowell-Black alleged that she tested positive for THC.

58.     Ligocki was subsequently drug-tested repeatedly over the course of her probation. Each time, she was required to urinate with the door open and with a Sentinel employee standing at the door. Sentinel charged Ligocki a fee for each drug test.

59.     On September 17, 2015, McDowell-Black alleged that Ligocki's drug test was positive for THC.

60.     McDowell-Black told Ligocki that she was "violating" her. McDowell-Black told Ligocki that she would be required to perform 30 hours of community service or bring Sentinel $217.50 in 30 days.  McDowell-Black also told Ligocki that she would be required to take and pay for additional monthly drug tests for the next six months, and that she would not be eligible for early termination of probation.  Ligocki completed the community service.

61.     On December 4, 2015, Ligocki reported for a pre-scheduled probation appointment and submitted her required payment.  At this appointment, McDowell-Black instructed Ligocki to return to the Sentinel office for another drug test on December 10, 2015.  Ligocki did so.

62.     On December 10, 2015, Ligocki appeared at the Sentinel office and McDowell-Black instructed her to submit to a drug test.  On this occasion, Ligocki was required to urinate in a cup while the bathroom door was wide open, and with a Sentinel employee watching her urinate.

63.     Following the December 10 drug test, McDowell-Black claimed that Ligocki had again tested positive for THC.  The drug test result was in error because Ligocki had not used marijuana.  Ligocki objected that the test result was erroneous.

64.     McDowell-Black called Ligocki a "liar," told her she was going to issue a warrant for Ligocki's arrest, and instructed her to immediately leave her office.  McDowell-Black told Ligocki "I'll see you in jail."

65.     Since December 2015, Ligocki has experienced stress and anxiety from the fear that she could be imminently arrested in connection with drug tests that no court ordered her to take.

66.     To date, Sentinel has collected far more money for itself than it has allocated to the fine imposed in Ligocki's case.  The following chart shows Ligocki's payments and the manner in which Sentinel has distributed them:

| Date | Fine | Sentinel's Drug Test Fee | Sentinel's Probation Supervision Fee | Ga. Crime Victim Emergency Fund | Ligocki's Total Payment |
|---|---|---|---|---|---|
| July 23, 2015 | $41 | $15 | $35 | $9 | $100 |
| August 19, 2015 | $34 | | $35 | $9 | $78 |
| September 17, 2015 | $19 | $15 | $35 | $9 | $78 |
| October 26, 2015 | $4 | $30 | | | $34 |
| October 26, 2015 | | | $35 | | $35 |
| October 26, 2015 | | | | $9 | $9 |
| November 16, 2015 | | | $24 | | $24 |
| November 16, 2015 | | $15 | | | $15 |
| December 4, 2015 | $33 | $20 | | | $53 |
| December 4, 2015 | | | $46 | | $46 |
| December 4, 2015 | | | | $18 | $18 |
| Total Paid | $131 | $95 | $210 | $54 | $490 |

67.     To date, Ligocki has paid $490 in connection with her citation for driving while unlicensed.  Only $131 of that amount has been applied to her fine.  By contrast, Sentinel collected $305 for itself.

68.     To date, Ligocki has submitted to drug screens on five occasions.  She has paid Sentinel $95 in drug test fees that were never ordered by any court.

## CLAIMS FOR RELIEF

## COUNT ONE

### Unconstitutional Search and Seizure

### Violation of the Fourth and Fourteenth Amendments to the United States Constitution, Brought Under 42 U.S.C. § 1983, and Violation of Art. I, Sec. I, Para. XIII of the Georgia Constitution

### (by all Plaintiffs against Defendants)

69.     Plaintiffs incorporate herein and re-allege, as if fully set forth herein, all factual allegations of paragraphs 1-17, 22-23, and 28-68.

70.     Without probable cause or legal authority, Defendants required Plaintiffs and other probationers to submit their urine to Sentinel employees and to pay for drug tests not ordered by any court.  They did so for the purpose of generating revenue for their company.

71.     Defendants required Plaintiffs to submit to drug tests even though they had no basis to believe that either Plaintiff had committed or was committing any criminal offense or violation.

72.     Defendants required probationers to take drug tests at their own expense without any involvement of a court or objective standards governing when or how often this invasive procedure would occur.

73.     The search of each Plaintiff's urine was unreasonable under the Fourth and Fourteenth Amendments to the United States Constitution and under Ga. Const. art. I, sec. I, para. XIII.

74.     The urine tests administered to Plaintiffs constituted a search for which judicial oversight was required.  There was no such oversight permitting such an intrusive search in Plaintiffs' cases.

75.     The Defendants had fair warning that their conduct would violate the Constitution and no reasonable officer or probation officer could have believed that requiring Plaintiffs to submit to these drug tests was legal.

76.     In each and every instance set forth above, Defendants acted intentionally, with malice, and with actual intent to cause injury in the performance of their official functions.  Defendants knew or should have known that requiring

Plaintiffs to submit to drug tests, without any legal authority, violated Plaintiffs' constitutional rights.

77. As a direct and proximate result of Defendants' illegal policies and practices, Defendants searched Plaintiffs' urine in violation of law. Defendants are jointly and severally liable for the violations of Plaintiffs' rights, and the harm they suffered as a result, because each Defendant either personally participated in the actions or failures to act, or implicitly authorized, approved, or knowingly condoned or failed to remedy the wrongs at issue.

78. Defendants' above-described actions were willful, deliberate, and malicious, and involved reckless or callous indifference to Plaintiffs' rights and should be punished and deterred by an award of punitive or enhanced damages against Defendants as permitted by law.

## COUNT TWO

### Due Process Clause Violations

### Violation of the Fourteenth Amendment to the United States Constitution, Brought Under 42 U.S.C. § 1983, and Violation of Art. I, Sec. I, Para. I of the Georgia Constitution

### (by all Plaintiffs against Defendants)

79. Plaintiffs incorporate herein and re-allege, as if fully set forth herein, all factual allegations of paragraphs 1-17, 22-23, and 28-68.

80.     Defendants drug-tested Plaintiffs and other probationers without notice to the probationers that they would be required to submit to drug tests, and without any process available to challenge the legality of such tests.  By drug-testing Plaintiffs without notice or legal authority to collect their urine samples and by requiring Plaintiffs to pay for such testing, Defendants deprived Plaintiffs of their privacy interests and property without due process of law in violation of Plaintiffs' rights.  U.S. Const. amend. XIV; Ga. Const. art. 1, § I, ¶¶ I and II.

81.     Defendants jointly and severally caused deprivations of Plaintiffs' privacy interests and money, under color of law, without providing notice or an opportunity to be heard.  In addition, Defendants jointly and severally caused deprivations of Plaintiffs' substantive due process rights through their deliberate indifference to Plaintiffs' right to privacy and their conscience-shocking treatment of people under their control.

82.     Defendants further violated Luse's due process rights when McDowell-Black falsely told Luse, who had no money, that she would have to pay $140 within a few hours or be immediately jailed.  Certainly, Luse was under an obligation to pay court-ordered monies.  However, Georgia law provides that "the imposition of sanctions for failure to pay [monies assessed by the court] shall be within the discretion of the court through judicial process or hearings."  O.C.G.A. §

23

42-8-102(e)(2). Sentinel violates probationers' due process rights when it demands and collects the probationers' last dollar (or, in Luse's case, borrowed money), under threat of immediate incarceration, without judicial process.

83.     Defendants knew or should have known that the conduct described herein violated Plaintiffs' rights. Defendants' above-described actions were willful, deliberate, and malicious, and involved reckless or callous indifference to Plaintiffs' rights and should be punished and deterred by an award of punitive or enhanced damages against individual Defendants as permitted by law.

## COUNT THREE

### Money Had and Received

### (by all Plaintiffs against Defendants)

84.     Plaintiffs incorporate herein and re-allege, as if fully set forth herein, all factual allegations of paragraphs 1-17, 22-23, and 28-68.

85.     An action for money had and received is founded upon the equitable principle that no one ought to unjustly enrich himself at the expense of another, and is maintainable in all cases where one has received money under such circumstances that in equity and good conscience he ought not to retain it.

86. A cause of action based on the theory of money had and received may be brought against a private probation company to recover probation fees which it unlawfully collected from misdemeanor probationers in contravention of law.

87. Defendants placed themselves in the position of receiving and retaining money from the Plaintiffs which the Plaintiffs were not lawfully required to pay and which Sentinel was not lawfully entitled to receive.

## COUNT FOUR

### Conversion

### O.C.G.A. § 51-10-1

### (by all Plaintiff against all Defendants)

88. Plaintiffs incorporate herein and re-allege, as if fully set forth herein, all factual allegations of paragraphs 1-17, 22-23, and 28-68.

89. Defendants' practice of appropriating Plaintiffs' and others' money without legal authority constitutes conversion – an intentional tort under Georgia law. *See* O.C.G.A. § 51-10-1 ("The owner of personalty is entitled to its possession. Any deprivation of such possession is a tort for which an action lies.").

90.     Defendants took and converted to their own use the funds set forth above from Plaintiffs.  Plaintiffs are entitled to recover the amount of money converted, plus interest from the date of the conversion.

91.     Defendants' above-described actions were willful, deliberate, and malicious and should be punished and deterred by an award of punitive damages as permitted by law and in an amount to be determined at trial.

## COUNT FIVE

### Fraud

### (by all Plaintiffs against all Defendants)

92.     Plaintiffs incorporate herein and re-allege, as if fully set forth herein, all factual allegations of paragraphs 1-17, 22-23, and 28-68.

93.     Defendants committed the tort of fraud against Plaintiffs.  The tort of fraud has five elements: false representation, scienter, inducement, reliance, and injury.

94.     McDowell-Black made a series of false, verbal representations to both Plaintiffs that they were required to submit to and to pay for drug tests. McDowell-Black knew when making this false representation to Plaintiffs that Sentinel had no legal authority to require drug tests in these cases.  Sentinel,

through McDowell-Black, nonetheless induced Plaintiffs to submit to drug tests and to pay for them. Defendants undertook these acts with malice and intent to deceive Plaintiffs. McDowell-Black further made a false representation to Plaintiff Luse that if Luse was unable to pay, she would be jailed immediately at the sole discretion of her probation officer.

95.     Plaintiffs Luse and Ligocki relied on Defendant McDowell-Black's false representations regarding drug-testing and, as a proximate result of the false representations, Plaintiffs submitted their urine to Sentinel and paid Sentinel drug testing fees. Plaintiff Luse relied on McDowell-Black's false threats that Luse would be jailed immediately at the sole discretion of McDowell-Black if she failed to pay Sentinel on the day her payment was demanded.

96.     Plaintiffs were injured by their reliance on McDowell-Black's false representations regarding drug testing because they were required to submit to repeated and intrusive searches and paid money they did not owe. Luse was further injured by her reliance on McDowell-Black's false threats that Luse would be jailed immediately, at her probation officer's sole discretion, if she could not pay in accordance with Sentinel's payment deadline. Luse suffered worry, anxiety, and humiliation as a consequence of her probation officer's false statements.

## COUNT SIX

### Tortious Coercion

### (by all Plaintiffs against all Defendants)

97.     Plaintiffs incorporate herein and re-allege, as if fully set forth herein, all factual allegations of paragraphs 1-17, 22-23, and 28-68.

98.     Tortious coercion occurs when a threat coupled with an apparent intention and ability to carry out the threat coerces action or inaction contrary to the victim's will.  *See Peavy v. Bank South, N.A.*, 474 S.E.2d 690, 693, 222 Ga. App. 501, 503 (1996); Restatement (Second) of Torts § 871 cmt. f (1979).

99.     McDowell-Black threatened Plaintiffs with probation revocation if they failed to submit to and to pay for drug tests.  McDowell-Black had no legal authority to require drug tests in these cases and thus no lawful basis for her threats.

100.    McDowell-Black further threatened to jail Luse if Luse was unable to pay her fines and fees, contrary to established law holding that a person may not be jailed solely for inability to make a payment.

101.    McDowell-Black had the apparent intent and ability to carry out her threats through her role as a private probation officer for Sentinel.

102.    Plaintiffs unwillingly provided urine samples and unwillingly paid money as a result of McDowell-Black's threats.

103.    Plaintiffs were injured because they were required to submit to repeated, intrusive searches and repeatedly paid money they did not owe.

104.    Plaintiff Luse was further injured by her submission to McDowell-Black's threats to jail Luse if she could not pay.  Luse suffered worry, stress, anxiety, and humiliation as a consequence of her probation officer's threats.

## COUNT SEVEN

### Invasion of Privacy

### (by Plaintiff Ligocki against all Defendants)

105.    Plaintiffs incorporate herein and re-allege, as if fully set forth herein, all factual allegations of paragraphs 1-17, 22-23, and 28-68.

106.    An individual has a right of privacy regarding her use of a restroom. McDowell-Black required Ligocki to urinate in a cup with the bathroom door open in view of a Sentinel employee, without any legal authority.  In so doing, she intruded on Ligocki's seclusion in a restroom in a manner that would be offensive or objectionable to a reasonable person, and that was so to Ligocki.

107.   Being required to urinate with the bathroom door open in view of a Sentinel employee caused Ligocki embarrassment and humiliation.  Defendant McDowell-Black invaded Ligocki's right to personal privacy in violation of law.

## COUNT EIGHT

### Injunctive Relief

### (by all Plaintiff Ligocki against Defendants)

108.   Plaintiffs incorporate herein and re-allege, as if fully set forth herein, the allegations of paragraphs 1-17, 22-23, and 28-68.

109.   Ligocki is still on probation and is under the supervision of McDowell-Black and Sentinel.

110.   Ligocki seeks an injunction to prevent Defendants from requiring her and other probationers to submit to drug tests that were not ordered by the Probate Court.  Ligocki seek an injunction to prevent Sentinel and Sentinel probation officers from falsely informing probationers that they will be immediately jailed at the sole discretion of the probation officer if they are unable to pay.

111.   Defendants' conduct is not authorized by any Georgia law and violates 42 U.S.C. § 1983.

112.    Defendants' conduct is likely to continue unless enjoined. Defendants' conduct is causing Plaintiff and other current probationers immediate irreparable harm that cannot be remedied by the award of money damages. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs described herein.

113.    The balance of hardships and public policy strongly favor the Court entering a preliminary injunction and thereafter permanently enjoining Defendants' unlawful policies and practices as described herein.

## COUNT NINE

### Declaratory Relief

### (By Plaintiff Ligocki Against Defendants)

114.    Plaintiffs incorporate herein and re-allege, as if fully set forth herein, all factual allegations of paragraphs 1-17, 22-23, and 28-68..

115.    Ligocki is still on probation and is under the supervision of McDowell-Black and Sentinel.

116.    Without legal authority, Defendants forced Ligocki and other probationers to submit to drug tests and to pay for drug tests that were never ordered by any court.  McDowell-Black further has a practice of coercing

payments by using false threats that nonpayment will automatically result in immediate incarceration in the sole discretion of the probation officer.

117.   Pursuant to 28 U.S.C. § 2201, Ligocki seeks a declaration by the Court that Defendants may not require probationers to submit to drug test that have not been ordered by any court.  Plaintiff further seeks a declaration by the Court that Sentinel probation officers may not coerce payments from probationers by employing false threats that nonpayment will result in immediate jail in the sole discretion of the probation officer.

118.   Plaintiffs and putative class members will be adversely affected if Defendants continue to drug-test people in cases in which no drug testing has been ordered by the court.  Ligocki and others will be adversely affected if Defendants continue to coerce payments through false threats that nonpayment will result in immediate incarceration in the sole discretion of the probation officer.

## PRAYER FOR RELIEF

On the basis of the foregoing, Plaintiffs respectfully pray that this Court:

a.   Assume jurisdiction over this action;

b.   Determine by Order pursuant to Rule 23 of the Federal Rules of Civil Procedure that this action be maintained as a class action;

c.  Award Plaintiffs all actual damages, including damages for deprivation of money, mental anguish and emotional distress;

d.  Award Plaintiffs nominal and presumed damages for violations of Plaintiffs' constitutional rights;

e.  Award Plaintiffs punitive damages to the extent permitted by law;

f.  Declare that Defendants violated Plaintiffs' constitutional rights by:

   1.  requiring probationers to submit their urine to Sentinel probation officers and to pay for drug tests that were never ordered by any court;

   2.  coercing probationers to make payments by using false threats that nonpayment will result in immediate incarceration in the sole discretion of the probation officer.

g.  Enjoin Defendants from:

   1.  requiring probationers to submit their urine to Sentinel probation officers and to pay for drug tests that were never ordered by any court;

   2.  coercing probationers to make payments by using false threats that nonpayment will result in immediate incarceration in the sole discretion of the probation officer.

h.  Award costs and reasonable attorney fees under 42 U.S.C. § 1988 and any other applicable provision of law;

i.  Award such other and further relief as the Court deems just and proper.

Respectfully submitted this 17th day of February, 2016.[3]

s/Sarah Geraghty

Sarah Geraghty
Georgia Bar No. 291393
Ryan Primerano
Georgia Bar No. 404962
Gerald Weber
Georgia Bar No. 744878
SOUTHERN CENTER
  FOR HUMAN RIGHTS
83 Poplar Street, N.W.
Atlanta, GA 30303
Telephone: (404) 688-1202
Facsimile: (404) 688-9440
*sgeraghty@schr.org*
*rprimerano@schr.org*
*gweber@schr.org*

*Counsel for the Plaintiffs*

---

[3] Counsel hereby certifies that this document has been prepared in compliance with
Local Rule 5.1C using 14-point Times New Roman font.