FILED IN CLERK'S OFFICE
U.S.D.C. - Gainesville

AUG 2 1 2017

JAMES N. HATTEN, Clerk
By_____ Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# GAINESVILLE DIVISION

|  |  |  |
|---|---|---|
| RITA SANDERS LUSE, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | |
| | ) | NO. 2:16-CV-30-RWS |
| SENTINEL OFFENDER | ) | |
| SERVICES, LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING FINAL APPROVAL OF CLASS SETTLEMENT

This matter having come to be heard on August 14, 2017, to determine the

fairness of the parties' settlement agreement and whether the agreement should be

given final approval, the Court enters the following order approving the settlement

reached on behalf of the class.

## I.    BACKGROUND

### A.    Plaintiffs' Claims

Plaintiffs alleged that Defendant Sentinel Offender Services, LLC

("Sentinel"), is a private Delaware company that provides probation supervision

services in non-felony probation cases for courts throughout the State of Georgia.

Sentinel had a contract with the government of White County, Georgia, to

supervise probationers sentenced by the White County Probate Court.  Defendant Stacy McDowell-Black was a private probation officer employed by Sentinel to supervise probationers sentenced by that court.

Plaintiffs Rita Sanders Luse and Marianne Ligocki alleged that Defendants required probationers to submit to and pay for random urine screening for the presence of controlled substances, despite lacking authority to impose drug testing on probationers.  Probationers were required to pay Sentinel a fee of approximately $15 for each drug test.  Defendants agreed that certain probationers were required to undergo urine screening, but denied that the practice was unauthorized or unlawful.  Defendants further contended that certain probationers signed enforceable arbitration agreements, and that certain probationers consented to random drug screening.

Plaintiff Rita Sanders Luse was sentenced by the White County Probate Court and placed on probation on March 12, 2014, for the traffic offense of driving while unlicensed.  She was supervised by Defendants until around March 11, 2015. During her time on probation, Plaintiff Luse was required to undergo urine-screening approximately four times at a total cost of $60.  In the amended complaint, Plaintiff Luse also alleged that Defendant McDowell-Black threatened her with jail when she was unable to pay her fines and fees.

Plaintiff Marianne Ligocki was sentenced by the White County Probate Court and placed on probation on July 8, 2015, for the traffic offense of driving while unlicensed. She was supervised by Defendants until around July 7, 2016. During her time on probation, Plaintiff Ligocki was required to undergo urine-screening approximately six times at a total cost of $90. In addition, Plaintiff Ligocki paid $40 for confirmation tests by an outside laboratory after allegedly testing positive for marijuana use.

Plaintiffs filed this action against Defendants on February 17, 2016, asserting claims under the United States Constitution and the laws of the State of Georgia. Plaintiffs sought declaratory and injunctive relief, as well as compensatory and punitive damages. Plaintiffs also sought to certify a class consisting of "all persons with criminal charges requiring them to appear in the White County Probate Court who are, were, or in the future will be subject to the Defendants' policy and practice of requiring probationers to submit to and to pay for drug tests in the absence of any court order authorizing such drug tests." (Doc. 6 at 2.)

## B.    Terms of Proposed Settlement

On July 8, 2016, the parties attended a mediation session. During the mediation, the parties agreed to a framework upon which the claims asserted in this

case could be resolved.  In accordance with the framework developed during the

mediation, the parties entered into a settlement agreement ("the Agreement").  (*See*

Doc. 37-2.)  The Agreement requires the parties to move the Court to certify a

class of persons ("the Damages Class") consisting of each individual who meets

the following requirements: (1) the person was sentenced to probation by the

Probate Court of White County, Georgia; (2) the person's sentencing order did not

specifically authorize drug testing; (3) the person was subjected to drug testing by

Defendants on or after February 17, 2012; and (4) the person was not under a

written order by another court specifically requiring the person to submit to drug

testing by Defendants.

Based on a review of documents and files by Defendants and their attorneys,

the parties determined that the Damages Class consists of 276 individuals who had

submitted to a total of approximately 964 drug tests (approximately 3.5 tests per

Class Member).  The Agreement provides that each member of the Damages Class

will be notified of the terms of the Agreement and his or her right to opt out of the

Damages Class.  The Agreement further provides that Defendants will make

available an $80,000 fund ("the Class Fund") to reimburse all Class Members.

Each member of the Damages Class who completes and submits a claim form

within the designated time period is presumptively entitled to receive: (1)

restitution of any fees paid for drug screening, with "7 percent per annum simple interest," *see* O.C.G.A. § 7-4-2(a)(1)(A), in connection with unauthorized drug testing conducted on or after February 17, 2012 ("the Restitution Amount"); and (2) provided that there is a surplus after setting aside the Restitution Amounts for all responding Class Members, damages of up to $90 per unauthorized drug test conducted on or after February 17, 2012 ("the Damages Amount").  In the event that the Class Fund were not large enough to provide both the Restitution Amount and the full $90-per-test Damages Amount to each responding Class Member, the Damages Amount was to be determined by (1) calculating the Restitution Amount for each Class Member, (2) subtracting the aggregate of the Restitution Amounts from the Class Fund, and (3) dividing the remainder of the Class Fund by the number of unauthorized drug tests imposed on responding Class Members.  Any money remaining in the Class Fund after paying the full Restitution and Damages Amounts to each responding Class Member will be returned to Defendants after all responding Class Members have been paid.  The Agreement also provides that Defendants will pay attorney fees and costs in the amount of $25,000.

The Agreement provides that, if the Agreement is finally approved by the Court, the members of the Damages Class will release any claims that they may

have against Defendants as a result of the imposition of drug screening during their respective probation terms.

The Agreement further requires the parties to move the Court to certify a class of persons who are or will be placed on probation by the Probate Court of White County, Georgia ("the Injunctive Class"). The claims for prospective relief by Plaintiffs and the members of the Injunctive Class have been resolved by entry of the Consent Order. (Doc. 40.)

The Court preliminarily approved the Agreement and notice procedure on January 13, 2017. (Doc. 38.)

### C.    Results of Notice Procedure and Final Fairness Hearing

On August 14, 2017, the Court held a final hearing to determine the fairness of the settlement and to hear any objections to or concerns about the terms of the settlement. No objections were lodged with the Court concerning the settlement in this case, no one intervened in the case, and no one appeared at the hearing to object to the terms of the settlement. At the hearing, counsel for the parties reported that 106 of the 276 class members responded to the settlement notice. One class member opted out of the settlement and will not be bound by the Agreement or this Order. The remaining class members opted for payment under the terms of the Agreement. The parties' counsel further reported that the $80,000

fund provided by Defendants would be sufficient to pay full restitution and the full $90 in damages per unauthorized drug test.

## II.   NOTICE

Rule 23(e) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." The parties proposed, and the Court approved and ordered (Doc. 38 at 3-4), a process consistent with the notification requirements of Rule 23(e). The Court finds that the parties have complied with the notice procedure.

## III.   CLASS CERTIFICATION

### A.   The Damages Class Satisfies the Requirements of Rule 23(a).

The analysis required by Rule 23(a) focuses on numerosity, commonality, typicality, and adequacy of representation. Fed. R.Civ.P. 23(a). The Damages Class satisfies each of these requirements.

#### 1.   Numerosity

Rule 23 requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "There is no single fixed number of Class Members required to meet the numerosity requirement." *Hillis v. Equifax Consumer Services, Inc.,* 2007 WL 1953464, *7 (N.D. Ga. 2007). However, the

Eleventh Circuit has noted that "generally less than twenty-one is inadequate, [and] more than forty [is] adequate . . . ." *American Cast Iron Pipe Co.,* 784 F.2d 1546, 1553 (11th Cir. 1986).

In this case, the Damages Class consisted of 276 individuals, a number more than sufficient to make joinder of all class members impracticable. *See id.*   In addition, "the proposed class is 'adequately defined and clearly ascertainable.'" *Carriuolo v. General Motors Co.*, 823 F.3d 977, 984 (11th Cir. 2016) (quoting *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012)).  The parties represent that each member of the Damages Class has been ascertained by examining records in Defendants' possession identifying whether a particular probationer was drug tested during the period in question, whether the sentencing court authorized the testing, and how much each probationer paid for the drug testing.

### 2.    Commonality

Rule 23 requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  A common question is one "capable of classwide resolution" such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Carriuolo v.*

*General Motors Co.*, 823 F.3d 977, 984 (11th Cir. 2016) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).

The claims of the members of the Damages Class are all predicated on the common legal question of whether requiring probationers to submit to and pay for urine screening is unlawful in the absence of a written court order requiring such testing. Therefore, Rule 23(a)(2)'s commonality requirement is satisfied. *See, e.g.*, *In re Scientific-Atlanta, Inc. Securities Litig.*, 571 F. Supp. 2d 1315, 1325 (N.D. Ga. 2007) (finding commonality requirement met where all claims were based on defendant's "series of false or misleading statements during the class period").

### 3.    Typicality

Rule 23 requires that 'the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This requirement is satisfied when "the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Ault*, 692 F.3d at 1216 (quoting *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984)).

Here, the Plaintiffs and the other members of the Damages Class all assert claims based on Defendants' practice of drug screening every probationer for a fee

regardless of whether drug screening was specifically ordered by the sentencing court. The "strong similarity of legal theories" asserted by each Class Member is sufficient to satisfy Rule 23(a)(3). *Local 703, I.B. of T. Grocery & Food Employees Welfare Fund v. Regions Financial Corp.*, 762 F.3d 1248, 1259 (11th Cir. 2014) (quoting *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1357 (11th Cir. 2009)); *see Ault*, 692 F.3d at 1216.

### 4.  Adequacy

"The adequacy of representation prerequisite of Rule 23 requires that the class representatives have common interests with the non-representative class members and requires that the representatives demonstrate that they will vigorously prosecute the interests of the class through qualified counsel." *In re Scientific-Atlanta, Inc. Securities Litig.,* 571 F. Supp. 2d 1315, 1331 (N.D. Ga. 2007). Here, Plaintiffs Rita Sanders Luse and Marianne Ligocki have no interests antagonistic to those of the other Class Members, and Plaintiffs have vigorously prosecuted this action to date. Plaintiffs' attorneys have litigated numerous class actions in the state and federal courts. Therefore, the interests of the Class Members will be fairly and adequately protected by Plaintiffs and their attorneys.

**B.      The Damages Class Satisfies the Requirements of Rule 23(b)(3).**

Rule 23(b)(3) "allows the maintenance of a class action when 'the court

finds that the questions of law or fact common to class members predominate over

any questions affecting only individual members, and that a class action is superior

to other available methods for fairly and efficiently adjudicating the controversy.'"

*Carriuolo v. General Motors Co.*, 823 F.3d 977, 985 (11th Cir. 2016) (quoting

Fed. R. Civ. P. 23(b)(3)).  The two parts of this Rule are referred to as the

"predominance" and the "superiority" requirements.

**1.     Predominance**

"[T]he focus of Rule 23(b)(3) is on the predominance of common

questions."  *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 133 S.

Ct. 1184, 1195 (2013) (emphasis omitted).  Common issues predominate "if they

have a 'direct impact on every class member's effort to establish liability that is

more substantial than the impact of individualized issues in resolving the claim or

claims of each class member.'"  *Id.* (quoting *Vega v. T-Mobile USA, Inc.*, 564 F.3d

1256, 1270 (11th Cir. 2009)); *see also Williams,* 568 F.3d at 1357 (noting common

questions predominate "if they have a direct impact on every class member's effort

to establish liability and on every class member's entitlement to injunctive and

monetary relief.").  Whether common issues predominate requires courts to "take

11

into account the claims, defenses, relevant facts, and applicable substantive law."

*Coastal Neurology, Inc. v. State Farm Mut. Auto. Ins. Co.,* 458 F. App'x 793, 794

(11th Cir.2012) (quoting *Klay v. Humana, Inc.,* 382 F.3d 1241, 1254 (11th Cir.

2004)).  Common issues may predominate over individualized ones "if those issues

that are subject to generalized proof predominate over those that are subject to

individualized proof." *Kubiak v. S.W. Cowboy, Inc.,* 2014 WL 2625181, at *18

(M.D. Fla. June 12, 2014).

In this case, common questions of law and fact predominate over

individualized issues.  Defendants supervised hundreds of probationers in White

County who were subjected to drug tests for a fee.  Plaintiffs assert that the

administration of these drug tests and the collection of these fees was unlawful and

unconstitutional.  If every Class Member brought an individual action, each would

attempt to prove essentially the same set of facts and Defendants would generally

assert the same defenses.  Similarly, if the Court were to hold that the drug test

policy is unlawful, that conclusion would establish Defendants' liability in all of

the Class Members' cases.  As such, the proposed class here is "sufficiently

cohesive to warrant adjudication by representation." *See Amchem Products, Inc. v.

Windsor*, 521 U.S. 591, 623 (1997).

## 2.    Superiority

The second part of Rule 23(b)(3) requires that Plaintiffs establish that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  Factors bearing on this determination include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

*Id.*  In weighing the relative advantages of a class action, courts consider what is "realistically available to plaintiffs." *Klay*, 382 F.3d at 1269.

The proposed class action is a fair and superior method of adjudication because individual legal representation is unlikely due to class members' lack of resources and the modest damages involved.  The parties' counsel represent that they are unaware of any similar litigation brought by Class Members, which indicates that the "small recoveries" that would likely be available to potential plaintiffs "do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem Products*, 521 U.S. at 617 (quoting *Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 344 (7th Cir.1997)).  The Court is unaware of any reason why Class Members would have an interest in prosecuting separate

actions.  Given Class Members' likely financial limitations and the small sums involved, a class action may be the only opportunity many Class Members have to assert their rights.

This class action is also an efficient and superior method of adjudication because requiring each Class Member to adjudicate a separate claim would be "repetitive, wasteful, and an extraordinary burden on the courts." *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 725 (11th Cir. 1987) (quoting *Kennedy v. Tallant*, 710 F.2d 711, 717-18 (11th Cir. 1983)).  Concentrating this action in a single forum promotes efficiency as well as Class Members' interests.  This forum is ideal because most of the Class Members reside in or near White County, Georgia.

## IV.   THE INJUNCTIVE CLASS SHOULD BE CONDITIONALLY CERTIFIED FOR SETTLEMENT PURPOSES.

### C.   The Injunctive Class Satisfies the Requirements of Rule 23(a).

The Injunctive Class satisfies Rule 23(a) for the same reasons as the Damages Class.  As explained above, hundreds of probationers are supervised by Defendants and the identities of those probationers are easily ascertainable, satisfying the numerosity requirement.  Similarly, the practices subject to the proposed Consent Order involve, for the reasons discussed above, common questions of law and fact, and those practices impacted the named Plaintiffs in a

14

manner typical of other members of the Injunctive Class.  As discussed above, Plaintiffs and their counsel will adequately represent the Injunctive Class.

### D.     The Injunctive Class Satisfies the Requirements of Rule 23(b)(2).

Under Rule 23(b)(2), class certification is warranted when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. Pro. Rule 23(b)(2); *see Melanie K. v. Horton*, No. 1:14-cv-710-WSD, 2015 WL 1308368, at *5 (N.D. Ga. March 23, 2015).   Plaintiffs allege that Defendants unlawfully drug-screen probationers absent an order authorizing the screening by the sentencing court. Plaintiffs also allege that Defendants and their employees threaten probationers with jail solely for their inability to pay fines and fees.  The Consent Order contains provisions that will prevent similar conduct on behalf of the Injunctive Class, thereby remedying on a class wide basis any injury Defendants' alleged conduct would cause current and future Class Members.  *See, e.g., Melanie K.*, 2015 WL 1308368, at *5; *see Holmes v. Continental Can Co.*, 706 F.2d 1144, 1155 (11th Cir. 1983) (stating Rule 23(b)(2) applies to "claims resting on the same grounds and applying more or less equally to all members of the class").

## V.    FINAL APPROVAL OF THE SETTLEMENT

Under Rule 23 of the Federal Rules of Civil Procedure, "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. (e); *see Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1217 (11th Cir. 2012) ("Class actions can only be settled with the approval of the court."). To finally approve a settlement, the Court must find that the parties' proposed resolution of the claims is fair, reasonable, and adequate to the affected Class Members. See Fed. R. Civ. P. 23(e)(2). Relevant factors include "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the anticipated complexity, expense, and duration of litigation; (5) the opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved." *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1240 (11th Cir. 2011); *see also Nelson v. Mead Johnson & Johnson Co.,* 484 Fed. App'x 429, 434 (11th Cir. 2012).

### A.    Likelihood of Success at Trial

Plaintiffs claim that Defendants violated their rights under the United States Constitution and Georgia law by requiring them to submit to and pay for drug tests that were unauthorized, having not been ordered by the sentencing court. (Doc. 17

16

at ¶¶ 1-11.) Defendants deny that the drug tests were unauthorized, claiming that the drug tests were in fact authorized by the terms of the White County Probate Court's probation orders. (Doc. 11 at 6-8.) Defendants further argue that Plaintiffs consented to the testing by signing paperwork completed by every probationer supervised by Defendants. (*Id.*) In addition, Defendants claim that this Court lacks jurisdiction over certain claims because Plaintiff Ligocki and other probationers consented to arbitrate their claims by signing "Sentinel's Program Rules and Instructions agreement." (Doc. 9 at 20-21; Doc. 10 at 21.)

At a status conference before this Court, Defendants indicated that they intended to file a motion to compel arbitration, which could impact the claims of probationers who signed purported arbitration agreements. Other defenses raised by Defendants included that Sentinel is not a person acting under color of law for purposes of 42 U.S.C. § 1983 (Doc. 10 at 23), that the claims against McDowell-Black are barred by qualified immunity (Doc. 9 at 22), and that the claims asserted by Plaintiffs and Class Members are barred by the favorable-termination requirement announced in *Heck v. Humphrey*, 512 U.S. 477 (1994) (Doc. 9 at 23; Doc. 10 at 24).

Defendants' factual and legal defenses have not been tested.  However, the parties have acknowledged (Doc. 37-1 at 19-20) that there is uncertainty about how the merits of Plaintiffs' claims would ultimately be resolved.

### B.    Range of Possible Recovery

"In determining whether a settlement is fair and reasonable, the court must also examine the range of possible damages that plaintiffs could recover at trial and combine this with an analysis of plaintiffs' likely success at trial to determine if the settlements fall within the range of fair recoveries." *Columbus Drywall,* 258 F.R.D. 545, 559 (N.D. Ga. 2007).  The "challenge Plaintiffs would face, if their claims did survive on the merits, in proving damages," is a factor the Court may consider in evaluating the range of potential damages.  *See Greco v. Ginn Development Co.,* 635 F. App'x 628, 632 (11th Cir. 2015).

If this case went to a trial and class wide liability were established, the Class Members might recover only slightly more than the Restitution Amount.  *See, e.g., Gray ex rel. Alexander v. Bostic*, 720 F.3d 887, 892 (11th Cir. 2013); *cf. Carey v. Piphus*, 435 U.S. 247, 266-67 (1978) (holding plaintiff could "recover nominal damages not to exceed one dollar" for violations of right to procedural due process).

In contrast, the Agreement provides for not only restitution of money paid for drug tests, with interest, but damages of up to $90 per test.  Defendants have agreed to make available a fund of $80,000 to compensate Class Members for allegedly unauthorized drug testing.  Counsel for the parties represent that the fund will reimburse each of the 105 Class Members who opted into the settlement for any drug-testing fees paid to Defendants, with interest, and $90 per test.

Given the uncertainties discussed in the preceding section—which could reduce Class Members' recovery to zero if the parties prolonged the litigation and Defendants prevailed on one or more defenses—the Court finds that the proposed settlement is fair and within the range of possible recovery at trial.  *See Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1218 (11th Cir. 2012) ("If [defendant] prevails at trial, the class will be left with no remedy at all.").

### C.    Point on or Below the Range of Possible Recovery at Which a Settlement Is Fair, Adequate, and Reasonable

Since Fourth Amendment and Due Process Clause violations can result in nominal damages awards even when a plaintiff prevails, and because there is a risk that Class Members would lose on the merits if they proceeded with this litigation, *see Greco*, 635 F. App'x at 632-33, the settlement range is fair, adequate and reasonable.  Settlements have been approved where they provided far less than the damages that plaintiffs could possibly recover at trial.  *Columbus Drywall*, 258

F.R.D. at 559; *see, e.g.*, *In re Domestic Air Transp. Antitrust Litig.,* 148 F.R.D. 297, 325 (N.D. Ga. 1993) (approving a comprehensive settlement equal to 12.7 to 15.3 percent of the potential recovery); *see also In re Currency Conversion Fee Antitrust Litig.,* 2006 WL 3247396, *6 (S.D. N.Y. 2006) (approving settlement of "roughly 10-15%" of the allegedly illegal fees collected from the class).

Here, by contrast, the Agreement allows a potential recovery well in the range of what Class Members could recover after a full trial.  Class Members who have opted into the settlement will recover the fees that they paid, with interest, and $90 per drug test.  These amounts are more than what might be awarded after a trial.  This weighs in favor of finding the Agreement fair and reasonable.  *See, e.g.*, *Poertner v. Gillette Co.*, 618 Fed. App'x 624, 628 (11th Cir. 2015) (finding settlement fair and reasonable where "the $6 that could be claimed [by certain class members] exceeded the damages that an average class member would have received if the class had prevailed at trial").

In addition to the monetary relief that the Agreement provides, the Court should also consider the benefits conferred on Class Members by the proposed Consent Order.  *See Poertner v. Gillette Co.*, 618 Fed. App'x 624, 628-29 (11th Cir. 2015) (holding district court did not abuse discretion in treating "the value of the nonmonetary relief" as "part of the settlement pie").  The Consent Order in this

case bars Defendants from requiring probationers to submit to drug screening unless it has been specifically ordered in writing by the sentencing court. The Consent Order also requires Defendants to assist probationers who have difficulty making payments and forbids unlawful threats of jail for probationers who cannot pay. The proposed Consent Order will ensure that any Class Member currently on probation with Defendants, or who is placed on probation with Defendants in the future, will not be subjected to the alleged practices challenged in this lawsuit.

For these reasons, the payments called for by the Agreement are within the range that would be fair, adequate and reasonable.

### D.    Complexity, Expense, and Duration of Litigation

Litigating this case would likely be expensive and time consuming. Defendants have proposed an extended discovery period (Doc. 25 at 8), and sought a three-phase discovery process (Doc. 25 at 14-16), likely interrupted by a motion to compel arbitration and, depending on the outcome of that motion, an interlocutory appeal. Further discovery would also be necessary with respect to class certification and the parties' claims and defenses. Litigation of this case would involve extensive adversarial proceedings and would require a substantial amount of time and effort by the parties as well as the Court. *Cf. Melanie K. v. Horton*, No. 1:14-CV-710-WSD, 2015 WL 1799808, at *3 (N.D. Ga. Apr. 15,

2015) (granting preliminary approval of settlement partly because "the Parties w[ould] be highly motivated to aggressively litigate this case if a settlement was not approved").

### E.     Substance and Degree of Opposition to the Settlement

"In determining whether to certify a settlement class, a court must also examine the degree of opposition to the settlement." *Columbus Drywall,* 258 F.R.D. at 560.  Here, the parties' counsel represent that they are unaware of any objectors or intervenors.  At the final fairness hearing held in open court on August 14, 2017, no objections were voiced to the settlement agreement.  Therefore, the Court finds no opposition to the settlement.

### F.     Stage of Proceedings at Which the Settlement Was Achieved

"The stage of the proceedings at which a settlement is achieved is evaluated to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005).  Here, the parties represent (Doc. 37-1 at 26) that Plaintiffs' counsel thoroughly investigated the case using public records, interviews with probationers, and other information sources.  The Class Members have been identified by consulting paperwork in the parties' possession.  Therefore, the Court

22

finds that the parties had sufficient information to reasonably conclude that the benefits of settling under the terms of the Agreement outweigh the potential benefits of continued litigation. And while the Agreement was reached relatively early in the litigation, it is the product of good-faith, arm's-length negotiations assisted by an experienced and neutral mediator.

### G.    Conclusion

"[T]he Eleventh Circuit has held that a court should certify a settlement if it is fair, reasonable, adequate and free of collusion." *Columbus Drywall*, 258 F.R.D. at 559. "It has been repeatedly recognized that settlements are highly favored in the law and will be upheld whenever possible because they are means of amicably resolving doubts and preventing lawsuits. Settlements in class action cases are also favored because they conserve judicial resources by avoiding the expense of a complicated and protracted litigation process . . . ." *Hillis,* 2007 WL 1953464, at *9 (internal citations omitted). Moreover, "[i]n considering the settlement, the district court may rely upon the judgment of experienced counsel for the parties." *Nelson,* 484 Fed. Appx. at 435.

## VI.    FINAL ORDER ON SETTLEMENT

For the reasons set forth above, the Court hereby GRANTS final approval to the settlement agreement and ORDERS as follows:

1.  Within 30 days of entry of this Order, Defendants shall provide a check for the Total Damages Amount to Plaintiffs' attorneys. (Doc. 37-2 ¶ 18.)

2.  Within 30 days of this Order, Defendants shall provide the Luse Check, the Ligocki check, and a check for attorney's fees and mailing expenses to Plaintiffs' attorneys. (Doc. 37-2 ¶¶ 6, 20-21, 28.) Following execution of the Releases attached to the Settlement Agreement as Appendices E and F, Plaintiffs' attorneys will deliver the Luse Check to Plaintiff Luse, and the Ligocki Check to Plaintiff Ligocki.

3.  Within 21 days of receiving from Defendants the check for the Total Damages Amount, Plaintiffs' attorneys will mail a check for the Individual Payment Amount to each member of the Class who is entitled to payment. Each check will be mailed to the address shown on the completed Claim Form submitted by each Class Member.

4.  Excluding Class Member Samuel Jason Payne, who timely opted out of the class action settlement in this case, all of the Class Members identified in the List of Potential Class

Members filed in this case (Doc. 37-2 at 29), will be bound by this and all subsequent orders and judgments of the Court, and will be precluded from asserting any claim or lawsuit against Sentinel Offender Services, LLC, or Stacy McDowell-Black, and their respective agents, officers, employees, officials, and personal representatives as a result of the imposition of drug screening during the time period covered by this Agreement.

5. The Court hereby dismisses with prejudice all claims for damages that members of the Class may have against Defendants with respect to the imposition of drug screening between February 17, 2012, and August 14, 2017.

SO ORDERED, this *21st* day of *August*, 20*17*.

The Honorable Richard W. Story
United States District Court Judge

25